# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

SILVA GREER, AS ADMINISTRATRIX
OF THE ESTATE OF R.J. RANDLE,                                           PLAINTIFF,

VS.                                                    CIVIL ACTION NO. 4:08CV042-P-B

MEDTRONIC, INC.,                                                        DEFENDANT.

## MEMORANDUM OPINION

This matter comes before the court upon Defendant Medtronic, Inc.'s Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6). After due consideration of the motion and the responses filed

thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

The plaintiff filed the instant action in the Circuit Court of Leflore County, Mississippi on

February 20, 2008. The three-page Complaint succinctly alleges one paragraph of facts, *i.e.*, that:

> Mr. Randle was under the care of Dr. Jimmy W. Lott for heart problems. Dr. Lott
> placed an Implantable Cardioverter Defibrillator ("ICD") in Mr. Randle to help his
> heart problem. The ICD was defective and caused the death of Mr. Randle on
> January 22, 2005. On February 22, 2005, the wife of Mr. Randle received a letter
> dated February 21, 2005, informing her that the manufacturer of his device advised
> that there was a possible detective [sic] with his device.

Complaint at ¶ 4. The plaintiff then purports to state six counts alleging that Medtronic, Inc.

breached the following duties: (1) to properly research its ICD device; (2) to properly develop its

ICD device; (3) to properly test its ICD device; (4) to properly warn patients of the danger

associated with its ICD device; and (5) to timely identify and warn Mr. Randle that his ICD device

was defective. In the sixth count, the plaintiff alleges: "The Defendant ignored clear warning signs

that the ICD was defective and hid this information from the public to increase its profits."

Complaint at ¶ 21. The Complaint alleges that all of these actions or inactions proximately caused Mr. Randle's death. The Complaint seeks one million dollars in compensatory damages and ten million dollars in punitive damages.

On March 21, 2008 Medtronic, Inc. removed this case to federal court asserting federal diversity jurisdiction. On March 28, 2008 Medtronic, Inc. filed the instant motion to dismiss wherein they argue that (1) this case should be dismissed with prejudice for failure to file before the applicable three-year statute of limitations period, (2) the plaintiff's fraud-based claim is not stated with particularity as required by Fed. R. Civ. P. 9, and (3) the plaintiff's claim for punitive damages should be dismissed for failure to allege specific facts warranting recovery for punitive damages.

The plaintiff argues that the discovery rule contained in Miss. Code Ann. § 11-1-49 tolled the statute of limitations period from the date of Mr. Randle's death on January 22. 2005 to the date his wife received a letter on February 21, 2005 from Medtronic, Inc. This letter indicated that there was a possible defect in the particular ICD model that was implanted in Mr. Randle. With regard to the defendant's Rule 9 argument, the plaintiff maintains that she did not allege a fraud-based claim. The plaintiff also argues that her punitive damages claim was sufficiently plead to conform with the notice-pleading standard of Fed. R. Civ. P. 8.

## II. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(6) Standard

Pursuant to Fed. R. Civ. P. 12(b)(6) a defendant may file a motion to dismiss a plaintiff's claim or claims for failure to state a claim upon which relief can be granted. The traditional test for ruling upon a 12(b)(6), as announced in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), is "in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007) recently "retired" that test, stating instead that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, [and] "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action", on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. at 1964-65. (some citations omitted for clarity).

Thus, the court must determine whether the defendant has established that the plaintiff's factual allegations in her Complaint, taken as true, are enough to raise a right to relief above the speculation level.

## B. Discovery Rule

It is undisputed that the applicable statute of limitations period for the plaintiff's claim is three years pursuant to Miss. Code Ann. § 15-1-49. At issue is whether the discovery rule contained within § 15-1-49 applies to bar the plaintiff's action. According to § 15-1-49(2): "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."

It would seem that it is unclear in Mississippi whether or not the discovery rule requires that

the plaintiff know of the injury *and* the possible cause in order for the three-year statute of

limitations period to begin to run. This court in *Beck v. Koppers*, 2005 WL 2715910 (N.D. Miss.

2005) held that Fifth Circuit precedent, interpreting Mississippi law, required the plaintiff to know

of the injury and the cause. In adopting Judge Pickering's opinion in *Jackson v. Phillips Building

Supply of Laurel*, 246 F.Supp.2d 538 (S.D. Miss. 2003), this court noted that:

> [A]s observed by Judge Pickering, the Fifth Circuit Court of Appeals in *Kemp v. G.D. Searle & Co.,* 103 F.3d 405, 407 (1997), when interpreting *Owens-Illinois, Inc. v. Edwards,* 573 So.2d 704, 709 (Miss.1990), concluded "that the statute of limitations began to run when [the plaintiff] knew of her injury and its cause." *Kemp*, 103 F.3d at 409 (emphasis added); *see also Cannon v. Mid-South X-Ray Co.*, 738 So.2d 274, 278 (Miss.Ct.App.1999) ("The majority holds that the plaintiff had to know of her illness *and its cause."* ) (Southwick, J. dissenting).

*Beck*, 2005 WL 2715910.

The defendant in the instant case cites *PPG Architectural Finishes, Inc. v. Lowery*, 909 So.2d

47 (Miss. 2005) for the proposition that Mississippi law subsequent to this court's decision in *Beck*

has changed the landscape by focusing on knowledge of the injury itself, not the cause.

In *Lowery*, the plaintiff lost consciousness after inhaling paint fumes at work and was treated

that day at the hospital. It was not until several years after her exposure to the paint fumes that the

plaintiff received definitive medical confirmation that her illness had been caused by the paint

fumes. The Mississippi Supreme Court held that the plaintiff knew or reasonably should have known

of her exposure to paint fumes on the very night it occurred and therefore the statute of limitations

period began to run that day. *Lowery*, 909 So.2d at 48.

Of course, since this issue is determined by Mississippi law under the *Erie* doctrine, this

court is bound by the pronouncements of *Lowery*. What follows is a discussion of the operative rules

enunciated in *Lowery*.

Regarding the discovery rule, "if aggrieved persons do not know of their injury the statute of limitations [Miss. Code Ann. § 15-1-49] does not begin to run until they 'can reasonably be held to have knowledge of the injury or disease." *Lowery*, 909 So.2d. at 50 (citing *Owens-Illinois, Inc. v. Edwards*, 573 So.2d 704, 709 (Miss. 1990)). "At issue in all cases ... is *when* the plaintiff discovers their injury or disease." *Id.* (citing *Sweeny v. Preston*, 642 So.2d 332, 334 (Miss. 1994)) (emphasis in original). "This Court has cautioned that the discovery rule should only be applied in limited circumstances in negligence and products liability cases involving latent injury. Implicitly then, this Court has held that if a latent injury is *not* present the discovery rule would *not* apply." *Id.* at 50. (emphasis in original; internal citation omitted). "A latent injury is defined as one where the 'plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable **nature of the wrongdoing in question** ... [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful conduct.'" *Id.* at 50 (quoting *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 168 (Miss. 1999)). "This Court commented that a plaintiff 'knew or reasonably should have known that **some negligent conduct had occurred**, even if they *did not know with certainty* that the conduct was negligent as a matter of law.'" *Id.* at 51 (quoting *Wayne Gen. Hosp. v. Hayes*, 868 So.2d 997, 1000 (Miss.2004)) (emphasis by Court). "This Court has also explained that the 'focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he *probably* has an **actionable injury**.'" *Id.* at 51 (citing *Wright v. Quesnel*, 876 So.2d 362, 366 (Miss. 2004)) (emphasis by Court).

With regard to the question of whether a plaintiff must know the injury and the cause, the court concludes that *Lowery* does not clearly stand in opposition to this court's ruling in *Beck*, given the language designated in bold above. This is because the aforementioned rules, when viewed

together, use the concepts of injuries and the alleged wrongful conduct causing those injuries interchangeably. Furthermore, the Court in *Lowery* observed: "In *Sweeney* [*v. Preston*, 642 So.2d 332, 334 (Miss. 1994)] this Court noted that, knowledge that there exists a causal relationship between the negligent act and the injury or disease *is essential* because it is well-established that prescription does not run against one who has neither actual nor constructive notice of the facts that would entitle him to bring an action." *Id*. at 50 (emphasis by Court; internal citations omitted).

Nevertheless, the court concludes that the discovery rule acts to bar the plaintiff's claims in the case at bar. The circumstances in this case are decidedly different than those in *Beck* since the particular plaintiff in question was among others in her neighborhood who developed cancer and none of them had notice of the possible cause until well after the diagnoses. Furthermore, given that the causation of cancer is more difficult to determine, it was unreasonable to expect the laymen in *Beck* to have been able to discover on their own the causation that became the basis of their lawsuit – a basis which did not become known after an alleged pattern was recognized and studied by experts.

In this case, reasonable diligence would have put a plaintiff on notice that the decedent's death could have been caused by the implanted medical device. The plaintiff does not deny that she knew that Mr. Randle had a defibrillator implanted within him to help his heart problem. It is also undisputed that she knew he died from heart failure on January 22, 2005. At that moment, with the exercise of reasonable diligence, she could have discovered that she probably had an actionable injury or knew or reasonably should have known that some negligent conduct had occurred, even if she did not know with certainty that the conduct was negligent as a matter of law. Though she did not receive a letter specifically regarding the ICD until approximately a month after Mr. Randle's

death, the letter itself is not alleged to have stated that the ICD probably caused Mr. Randle's death – rather, it is alleged to have informed her that the device has a "possible" defect. It should not be forgotten that it is not as though the plaintiff had to file her suit the very next day after Mr. Randle's death. She had three years to determine whether she had an actionable injury and essentially chose to sleep on her rights. Finally, another reason the clock began to run on the day of death is that the nature of this lawsuit is one for wrongful death and a "wrongful death claim itself accrues at death for the benefit of the statutory beneficiaries." *In re Estate of England*, 846 So.2d 1060, 1070 (Miss. Ct. App. 2003).

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendant Medtronic, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) should be granted and the plaintiff's claims should be dismissed with prejudice because Medtronic, Inc. met its burden in demonstrating that, even after taking the alleged facts as true, the plaintiff's claims do not rise above speculation given that Miss. Code Ann. § 15-14-49(2)'s discovery rule bars the plaintiff's action as untimely. According, a Final Judgment shall issue forthwith,

**THIS DAY** of April 25, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE